# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CARRIE DAWN RODRIGUEZ,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-55-STE |
| | ) | |
| **NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,** | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

The Social Security Administration denied Plaintiff's applications for disability insurance benefits and supplemental security income initially and on reconsideration. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 15-24). The Appeals Council denied Plaintiff's request for

review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 8, 2013, the alleged disability onset date. (TR. 17). At step two, the ALJ determined Ms. Rodriguez had the following severe impairments: residuals from childhood leg fracture and degenerative disc disease of the spine. (TR. 17). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 18).

At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work. (TR. 22). The ALJ further concluded that Ms. Rodriguez retained the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she can sit for 7 hours in an 8-hour workday and stand and/or walk for a total of 1 hour in an 8-hour workday. She can never use her feet for the operation of foot controls and never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs as well as occasionally balance and stoop. She can never kneel, crouch, or crawl. She should be permitted to utilize a walker to get to and from the workstation.

(TR. 18).

With this RFC, the ALJ made additional findings at step five. There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were

2

other jobs in the national economy that Plaintiff could perform. (TR. 58-59). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 60). The ALJ adopted the testimony of the VE and concluded that Ms. Rodriguez was not disabled based on her ability to perform the identified jobs. (TR. 23-24).

### III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred: (1) at step two, (2) at step three, and (3) in the evaluation of opinion evidence from a treating physician.

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

### V. STEP TWO

At step two, the ALJ concluded that Plaintiff had severe impairments involving "residuals from childhood leg fracture and degenerative disc disease of the spine." (TR. 17). According to Ms. Rodriguez, the ALJ failed to consider her tethered spinal cord as a severe impairment at step two. (ECF No. 15:17-23). At step two, plaintiff bears the

3

burden of proof and must "demonstrate an impairment or combination of impairments that significantly limits the claimant's ability to do basic work activity." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997). Even if plaintiff had satisfied her burden to show that her tethered spinal cord was a severe impairment, the ALJ's step two finding which did not include the disorder as a severe impairment does not constitute reversible error.

"Under the regulations, once an ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate other disorders as severe at step two, because at later steps the agency 'will consider the combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" *Barrett v. Astrue*, 340 F. App'x. 481, 484 (10th Cir. 2009) (unpublished) (quoting 20 C.F.R. § 404.1523). The ALJ "made an explicit finding that [plaintiff] suffered from [a] severe impairment[ ]. That was all the ALJ was required to do" at step two. *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007).

## VI. STEP THREE

At step three, an ALJ is required to determine whether a claimant's impairments are "equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996) (quotation omitted). In so doing, he must "discuss the evidence" and "explain why he found that [the claimant] was not disabled at step three." *Id.*

At step three, the ALJ concluded that Plaintiff did not meet or equal a listed impairment. (TR. 18). In doing so, the ALJ stated:

> The undersigned has specifically considered the applicable criteria, including Sections 1.02 and 1.04 of the Listing of Impairments with regard

4

> to the claimant's severe impairments. There are no findings based on diagnostic, clinical, and/or objective evaluations, including reports of laboratory tests and diagnostic imaging, consistent with the level of severity that meets the criteria under the Listings. As well, no examining or treating physician or medical provider reported medical provider reported findings since the alleged onset date that meet the criteria under the Listings.

(TR. 18). Ms. Rodriguez alleges reversible error at step three because the ALJ failed to discuss the evidence in support of his conclusions or provide an analysis as to why Plaintiff did not meet a Listing. (ECF No. 15:23-26). Plaintiff is correct.

In the present case, the ALJ failed to make the necessary findings. Although the ALJ identified two listings he had considered—1.02 and 1.04—his conclusion that neither listing had been met took the form of summary findings regarding a lack of evidence. (TR. 18). These findings are insufficient as they are not supported by the record. The Court reached a similar conclusion in *Groberg v. Astrue*, 415 F. App'x 65, (10th Cir. 2011). In *Groberg*, the plaintiff alleged that the ALJ failed to properly assess his chronic low back condition to determine whether it met Listing 1.04A. *Groberg*, 415 F. App'x at 72. In concluding that the plaintiff had not let the listing, the ALJ relied on a lack of objective evidence. *Id.*

In evaluating *Groberg's* claim, the Court began by noting that under *Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir. 1996), the ALJ is required to discuss the specific medical evidence relevant to his listing conclusions. *Id.* However, the Court stated that "[s]uch a discussion may not be essential in a situation where the ALJ relied on the *lack* of evidence to reach his conclusion (as here), and *there is in fact no evidence.*" *Id.* (emphasis in original). But, the Court continued, where "there *is* evidence that may meet the listing requirements, the ALJ is required to provide a proper analysis. Otherwise, it is

5

impossible to know how the ALJ weighed the evidence." *Id.* (emphasis in original). Even though the ALJ had relied on a lack of evidence to support his step three findings, the Court examined the record and found that it contained evidence which might have supported a listing. *Id.* As a result, the Court concluded that the ALJ's "naked reliance on the regulation [did] not satisfy the ALJ's duty to properly analyze the evidence" and reversal was warranted. *Id.* at 73.

*Groberg* is instructive in the instant case. Although the ALJ may have been entitled to rely on a lack of evidence to support his step three findings, such rationale would only have been appropriate if there was, in fact, no evidence. But here, as in *Groberg*, the record reveals evidence which may have led fact-finder to conclude that Ms. Rodriguez had met a listed impairment, triggering the ALJ's duty to explain his findings and cite the pertinent medical evidence.

The relevant listings are 1.02 and 1.04. Listing 1.02, Major Dysfunction of a Joint(s), requires:

- Gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s),

- findings on appropriate medically acceptable imaging of joint space narrowing, and

- Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02(A).

Listing 1.04(A), Disorders of the Spine, requires:

- A disorder of the spine resulting in compromise of a nerve root or the spinal cord,

- Evidence of a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with muscle weakness), and

- If involving the lower back, a positive straight-leg test.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A).

Although the ALJ relied on a lack of objective evidence to support this listing, the record suggests otherwise. Plaintiff's impairments primarily stem from a bicycle accident when she was 8 years old. In the accident, Ms. Rodriguez suffered a fractured leg, and as she grew into adulthood, she began experiencing interwoven back and leg problems related to the childhood injury which affected her ability to ambulate effectively. The record contains evidence from two periods of time—2008 and 2014-2015. All of the evidence is relevant to provide a complete background regarding the progression of Plaintiff's impairments. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ.").

The record begins on April 11, 2008 with a report from orthopedist Dr. Houshang Seradge. (TR. 286). Dr. Seradge's report states that Ms. Rodriguez had presented with complaints of pain in her lower back and pain and weakness in her left leg. (TR. 286). On examination, Dr. Seradge noted that Plaintiff had muscle atrophy of the quadriceps, demonstrated by the fact that her left quadricep was 5cm smaller in circumference than her right side. (TR. 286). Dr. Seradge also noted that Plaintiff was positive for a straight-

leg test on her left side and that x-rays of her lumbar spine and knees showed degenerative changes. (TR. 286). Dr. Seradge referred Plaintiff to a neurologist to rule out further radiculopathy and further evaluate her leg atrophy. (TR. 286). On April 21, 2008, an MRI of Plaintiff's lumbar spine showed minor disc bulging at L4-5 with mild narrowing of the left nerve root foramen. (TR. 289). An MRI of plaintiff's left knee showed a small joint effusion, suggestion of a bone contusion or some degenerative signal change along the anterior lateral tibial condyle, suspicion of a possible tear or the anterior horn lateral meniscus, and mild chondromalacia patella changes. (TR. 290).

On April 25, 2008, neurologist Dr. Juan Villazon reported to Dr. Seradge that Plaintiff had presented with lower back pain, as well as leg weakness, foot drop, tingling, and numbness in the left leg which caused her to drag her foot and frequently fall. (TR. 293). Dr. Villazon noted that Plaintiff had fractured her dorsal spine at age 8 and by age 16, she had begun developing leg weakness. (TR. 293). Dr. Villazon noted the leg atrophy and also that Plaintiff's left leg was shorter than the right. (TR. 293). Dr. Villazon performed an electromyogram which he states revealed "chronic denervation that is quite severe in the anterior [left] leg" and "a moderately severe loss of recruitment in the gluteus maximus and lesser denervation in the quadriceps, the femur, and the iliopsoas." (TR. 293). Dr. Villazon noted a 3 cm circumference differential in Plaintiff's legs and mild atrophy of the gluteal muscles. (TR. 293). Dr. Villazon's overall impressions were that Plaintiff suffered:

- a lumbosacral plexopathy involving the lumbar plexus, old, chronic, with foot drop,[1]

- peroneal compression or entrapment neuropathy at the left fibula,[2] and

- sensory loss with a suspected cord lesion, myelopathy,[3] or demyelinating disease.

(TR. 294). Because of the possibilities regarding some differential diagnoses, Dr. Villazon ordered an MRI of Plaintiff's brain, cervical spine, and thoracic spine. (TR. 291-292). The May 19, 2008 brain and cervical spine MRIs were essentially unremarkable, but the MRI of the thoracic spine revealed an anterior displacement of the spinal cord at the T5 level. (TR. 305, 307). Dr. Villazon reported the possibility of an arachnoid cyst which could be displacing he spinal cord. (TR. 305, 307). The final report from Dr. Villazon dated June 4, 2008. On June 11, 2008, Dr. Seradge performed a peroneal nerve decompression on Plaintiff's left knee. (TR. 308).

---

[1] Lumbosacral plexopathy is a rare peripheral nerve problem that results from injury to the lumbar or sacral plexuses. These are interwoven networks of nerves arising from nerve roots in the lumbar spine or the pelvis, respectively. Plexus injury can result from diabetes, tumor, radiation and obstetrical injury. The symptoms of lumbosacral plexopathy can include pain, numbness, tingling, weakness or hypersensitivity. Diagnosis is made through an Electromyogram. *See* http://www.vermontspineworks.com/services/nerve-function-testing/lumbosacral-plexopathy

[2] Peroneal nerve dysfunction is damage to the peroneal nerve leading to loss of movement or sensation in the foot and leg. The peroneal nerve is a branch of the sciatic nerve, which supplies movement and sensation to the lower leg, foot and toes. *See* https://medlineplus.gov/ency/article/000791.htm

[3] Myelopathy is an injury to the spinal cord due to severe compression. Myelopathy symptoms may include: lower back pain, tingling, numbness or weakness, and difficulty walking. *See* http://www.hopkinsmedicine.org/healthlibrary/conditions/nervous_system_disorders/myelopathy_22,Myelopathy

On March 24, 2014, Plaintiff presented to Variety Care Family Health and complained of pain in her hip, back, and left knee and stated that she could no longer bend her left knee and "falls at random times." (TR. 326). Plaintiff explained that her leg pain is chronic and secondary to her childhood accident. (TR. 326). Physician's Assistant Michael Richardson noted that Plaintiff used a cane for ambulation and had "virtually no control of the ipsilateral foot." (TR. 326). Diagnosis was knee pain and foot drop and Mr. Richardson referred Plaintiff to an orthopedist for further treatment. (TR. 326-327).

At OU Medical Center, Plaintiff saw Dr. Jeremy White on referral from Mr. Richardson. (TR. 382). On examination, Dr. White noted an "obvious foot drop" and that Plaintiff "walk[ed] with her knee hyperextended and circumduct[ed] her leg in the swing phase." (TR. 382-383). Dr. White also noted 3/5 strength in her knee flexion and extension with a range of motion of 30-90 degrees. (TR. 383). X-rays showed mild medial and lateral joint space narrowing with some osteophyte formation in the medial patella femoral compartment. (TR. 383). Dr. White ordered an MRI and CT of Plaintiff's spine. (TR. 383).

The August 22, 2014 MRI of Plaintiff's lumbar spine facet hypertrophy at the L3-L4 levels and mild left foraminal narrowing on the right and left at L4-L5. (TR. 361). At L5-S1, the MRI revealed:

> Disc dessication with mild-moderate loss of intervertebral disc space height. Left paracentral and central annular tear is present with an annular disc bulge and central disc protrusion. These changes indent thecal sac and with ligament flavum and facet hypertrophy narrow both lateral recesses, come in proximity to both traversing S1 nerve roots moderately narrow the spinal canal and contribute to mild-moderate left and mild right foraminal narrowing.

(TR. 362). At the T5-T6 level, the MRI showed a ventral deviation of the thoracic spinal cord to the left of the midline, which were compatible with the recurrence of an arachnoid cyst. (TR. 362). The CT of Plaintiff's thoracic spine showed a "severely flattened" and displaced spinal cord at the T5-T6 level, which could reflect an arachnoid cyst, cord adhesion, or cord herniation. (TR. 354).

On September 9, 2014, State Agency consulting physician Dr. Raymond Azadgoli examined Ms. Rodriguez. (TR. 339-345). On examination, Dr. Azadgoli noted muscle atrophy in Plaintiff's left leg, with a 6cm difference in circumference between her two legs, with strength in the left leg to be 3/5. (TR. 340, 345). Dr. Azadgoli noted a negative straight leg test, discomfort on flexion and extension of the low back, weak left sided toe and heel walking. (TR. 341). Dr. Azadgoli noted that Plaintiff ambulated without use of an assistive device in a "high stepping foot drop gait." (TR. 341). Dr. Azadgoli's assessment was left leg foot drop, low back pain with radiculopathy, and left knee pain. (TR. 341).

On November 24, 2014, state agency reviewing physician Dr. David McCartney stated that Ms. Rodriguez was "pretty impaired" and might qualify as having an "ineffective gait" which could stem from problems with her hip or back, complicated by the spinal cord cyst. (TR. 352). Dr. McCartney stated that he needed more medical evidence to determine if she might meet a listing. (TR. 352).

On March 17, 2015, Plaintiff presented to the Noble Family Health Clinic. (TR. 379-380). Certified Nurse Practitioner Travis Pendarvis noted "bil right lower ext weakness with foot drop, pt is unable to ambulate without assistance." (TR. 379). Mr. Pendarvis

11

assessed Plaintiff with spinal cord herniation and bilateral lower extremity weakness. (TR. 379).

On July 13, 2015, plaintiff presented for a neurologist visit at OU Medical, complaining of increasing numbness from Plaintiff's upper-mid back radiating to her toes, increasing weakness in her right leg, and increased blood pressure with walking. (TR, 390-391). Dr. Craig Rabb noted Ms. Rodriguez had a limited range of motion and weakness in her bilateral lower extremities, with limited flexion and extension in both legs, and foot drop on the left. (TR. 390).

On August 24, 2015, Plaintiff saw Dr. Karyn Koller at OU Medical with complaints of back pain. (TR. 411-412). Dr. Koller diagnosed a thoracic lesion and right leg weakness. (TR. 412). The following day, Dr. Michael Martin performed surgery on Ms. Rodriguez to de-tether and repair her spinal cord and drain her spinal cord cyst. (TR. 395-396). A neurosurgery progress note dated September 1, 2015 documented the surgery and stated that Plaintiff still suffered from thoracic myelopathy. (TR. 421).

On October 19, 2015, Dr. Martin authored a "Medical Source Statement of Ability to do Work-Related Activities (Physical). (TR. 422-427). There, Dr. Martin opined that Plaintiff suffered from severe myelopathy, lower extremity numbness, weakness, and spasticity. (TR. 422-423). Dr. Martin noted that Plaintiff used a walker and had an ability to for walk for less than one minute at a time, and less than 10 minutes total, during an 8-hour workday. (TR. 423). According to Dr. Martin, plaintiff could not ambulate without using an assistive device. (TR. 427).

In comparing the criteria for listings 1.02 and 1.04(A), the Court concludes that significant objective evidence exists from which the ALJ could have determined that either listing was met. Thus, like in *Groberg*, the ALJ erred in failing to cite a lack of objective evidence to support the step three findings. The Defendant attempts to justify the step three findings by arguing that neither listing could have been met, but Ms. Berryhill's arguments are not persuasive.

First, the Commissioner states that Plaintiff did not meet all the criteria for Listing 1.04(A) because that listing requires a positive straight-leg test and Dr. Azadgoli opined otherwise. (ECF No. 21:11). For two reasons, the Court rejects this argument. First, a positive straight-leg test is only required if the spinal disorder involves the lower back. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A). Here, Ms. Rodriguez' tethered spinal cord and cord displacement involved her thoracic, or middle, back, not her lower back. *See* TR. 395-396, 412, 421. Thus, the presence of a positive straight-leg test result was not necessary. Second, the ALJ did not rely on the lack of a positive straight-leg test result[4] and the Court cannot engage in a *post-hoc* analysis and speculate regarding the missing analysis. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."); *Lee v. Colvin*, No. CIV-12-0790-HE, 2013 WL 2449818, at *3 (W.D. Okla. June 5, 2013) (rejecting, as an improper *post-hoc* analysis, the Commissioner's

---

[4] See Tr. 18.

13

argument that the ALJ could have relied on certain evidence to conclude that a listing had not been met).

Next, the Commissioner contends that Plaintiff cannot meet Listing 1.02 based on a lack of evidence regarding Plaintiff's inability to ambulate effectively. (ECF No. 21:12). Ms. Berryhill presents two arguments: (1) that Plaintiff relied solely on the ALJ's allowance of a walker in the RFC as her only form of proof that she was limited in her ability to walk and (2) the record did not contain evidence that Plaintiff was ever prescribed an assistive device. (ECF No. 21:12). Again, neither argument is persuasive. First, the evidence contains multiple examples of Plaintiff's limitations with walking. *See* TR. 293, 294, 326-327, 341, 352, 379, 382-383, 390, 423, 427. Second, the Tenth Circuit Court of Appeals has held that no prescription for an assistive device is needed, only "medical documentation establishing the need for the device." *Staples v. Astrue*, 329 F. App'x 189, 190-192 (10th Cir. 2009).

Because significant evidence existed which could have established that Ms. Rodriguez had met the criteria for a listed impairment, the ALJ had a duty to discuss the evidence and explain why he found that that Ms. Rodriguez was not disabled at step three. He did not and reversal is warranted on that basis.

## VII. PLAINTIFF'S REMAINING ISSUE

Plaintiff also argues that the ALJ erred by failing to properly evaluate the opinion of Dr. Martin. (ECF No. 15:27-30). But the Court need not address this allegation, as the physical RFC may be affected on remand following additional findings at step three. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) ("We will not reach the

remaining issues raised by claimant because they may be affected by the ALJ's resolution of this case on remand.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for additional administrative findings.

ENTERED on October 10, 2017.

*[signature]*

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE